UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINE S.,

                Plaintiff,

v.                                                  5:19-CV-00474
                                                  (TWD)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OLINSKY LAW GROUP                        HOWARD D. OLINSKY, ESQ.
 *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.             SEAN D. SANTEN, ESQ.
 *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

       Currently before the Court, in this Social Security action filed by Christine S. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the Social Security Administration ("SSA") for a *de novo* review.

I.      **BACKGROUND**

    A.      **Procedural History**

On December 18, 2015, Plaintiff protectively filed Title II and Title XVI applications for disability insurance benefits and supplemental social security income alleging disability as of May 9, 2015. (Administrative Transcript[1] at 22, 216-31.) These claims were denied on April 7, 2016. T. 92-93. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). T. 144-45. Plaintiff subsequently appeared at an administrative hearing before ALJ Jude B. Mulvey on January 8, 2018, and testified that she suffered from chronic pain in her neck, shoulder, and lower back and fatigue due to a number of impairments, including fibromyalgia, and that the resulting pain and fatigue prevented her from working. T. 57-78. Vocational expert Esperanza DeStefano also testified. T. 78-90.

On February 28, 2018, the ALJ issued a written decision finding Plaintiff was not disabled. T. 19-44. The ALJ's decision followed the SSA's five-step sequential evaluation process for determining whether an adult is disabled. *See* 20 C.F.R. § 416.920(a). At step two, the ALJ found Plaintiff suffered from the following severe impairments: fibromyalgia/connective tissue disorder/inflammatory arthritis; degenerative disc disease in the lumbar spine and cervical spine; history of left shoulder impairment; breast cancer; anxiety; and depression. T. 25. The ALJ next found, based on the above-stated impairments, that Plaintiff had the residual functional capacity ("RFC") to perform "light work" except

> she is able to stand and/or walk for five hours in an eight-hour day and sit for three hours in an eight-hour day. The claimant should receive written, rather than verbal instructions. She is able to perform simple, routine tasks in a work environment free of fast-paced production requirements with few, if any, work-place changes.

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

T. 29.

Based upon this RFC, the ALJ concluded Plaintiff was not disabled because there were significant numbers of jobs in the national economy she could perform. Specifically, the ALJ noted the vocational expert testified that someone of Plaintiff's "age, education, work experience, and residual functional capacity" could perform the requirements of representative occupations such as marker, router, and photocopying machine operator. T. 37.

Plaintiff sought review of the ALJ's decision to the Appeals Council. T. 214-15. However, on February 24, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T. 1-5.

**B.    Parties' Contentions**

On April 23, 2019, Plaintiff timely filed a complaint in this Court seeking judicial review of the Commissioner's final decision. (Dkt. No. 1.) Pursuant to General Order 18, each party submitted supporting briefs which this Court treats as competing motions for judgment on the pleadings. (Dkt. Nos. 11, 13.)

In her brief, Plaintiff contends the ALJ did not follow SSA regulations when he weighed the medical opinion evidence and failed to properly consider Plaintiff's testimony regarding her pain, fatigue, and other symptoms. (Dkt. No. 11 at 22-24.) Plaintiff also contends an unconstitutionally appointed ALJ decided her case. *Id*. at 24-27. Defendant, on the other hand, asserts substantial evidence supports the ALJ's decision and Plaintiff waived any challenge to the propriety of the ALJ because she did not raise the issue at the administrative level. (Dkt. No. 13 at 7-27.)

## II.     LEGAL STANDARDS

### A.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

4

from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

      **B.**    **Standard for Benefits**[2]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the SSA promulgated regulations establishing a five-step sequential evaluation process to determine

---

[2] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C.     Standards for ALJ Evaluation of Opinion Evidence

In making a disability determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules he applies and the weight he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

In terms of weighing opinion evidence, the Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. § 404.1527(c). "Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), *adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from

7

sources who are not considered "medically acceptable sources" under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

### D.     Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[3] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

---

[3] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The Court will remain consistent with the terms as used by the Commissioner.

If so, at the second step, the ALJ must consider "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work." *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing, *inter alia*, 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[4]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id.*; *see also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the

---

[4] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

## III.     THIS COURT'S ANALYSIS

Plaintiff contends the ALJ did not properly account for the functional limitations imposed by her fibromyalgia/connective tissue disease, particularly in light of the increased fatigue and pain that Plaintiff experienced as a result of her chemotherapy and other cancer treatment. (Dkt. No. 11 at 17.)  This Court agrees and finds that the ALJ's RFC assessment of Plaintiff's physical impairments was not supported by substantial evidence.  As more fully set forth below, this Court finds the ALJ never adequately explained the substantial evidence purportedly supporting his conclusion that Plaintiff could meet the physical requirements of light work, as modified in the RFC.  *See Wilson v. Comm'r of Soc. Sec.*, No. 1:16-CV-77, 2017 WL 1194229, at *4 (N.D.N.Y. Mar. 30, 2017) ("To be clear, the Court is not suggesting that the ALJ is required to assign greater weight to [a particular] opinion on remand, so long as it is clear why the opinion is given the weight it is given, and that the decision is supported by substantial evidence."). Instead, the ALJ's RFC determination relied extensively on objective medical data and consultative examination results.  T. 30-31, 33-34.  This approach is inappropriate for assessing the functional limitations imposed by chronic pain conditions such as Plaintiff's fibromyalgia. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108-109 (2d Cir. 2003).

### A.     Plaintiff's Physical Limitations

Plaintiff's medical records show that she has been diagnosed with fibromyalgia since at least June 2014, although she had experienced "diffuse pain" since approximately 2004.  T. 364. Plaintiff's physicians also characterized her symptoms as chronic pain syndrome.  T. 412, 426. In support of that diagnosis, Dr. Linda Warnowicz, Plaintiff's treating rheumatologist, observed

ten tender points[5] during a physical examination on June 26, 2014.  T. 362.  On September 25, 2014, Dr. Warnowicz observed fifteen tender points. T. 347.

There were no treating physician opinions in the administrative record.  However, treating Nurse Practitioner ("NP") Cleveland, who had treated Plaintiff for pain-related issues since at least July 2014, issued several opinions related to Plaintiff's physical limitations.  T. 534-35, 575-76, 860, 1334-35.  On April 17, 2015, NP Cleveland completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" that identified Plaintiff's medical conditions as fibromyalgia, lupus, and spinal issues that were "causing constant pain."  T. 534.  NP Cleveland opined Plaintiff was "very limited" in her ability to stand and lift, and her physical impairments resulted in moderate limitations in Plaintiff's ability to walk, sit, climb stairs, maintain attention and concentration, and work at a consistent pace.  T. 535.

On January 27, 2016, NP Cleveland issued a more restrictive opinion of Plaintiff's physical limitations.  T. 575-76.  She opined that the symptoms associated with Plaintiff's cervical radiculopathy and degenerative disc disease would constantly interfere with the attention and concentration required for Plaintiff to perform simple work-related tasks.  T. 575.  She also opined Plaintiff could only walk about one block "without rest or significant pain," could not sit, stand, or walk for a full hour during the workday, and would require a twenty-minute break every hour.  *Id*.  NP Cleveland further opined Plaintiff could occasionally lift up to ten pounds.

---

[5]  Tender points are painful areas around the joints that are extremely sensitive to touch.  *See* https://www.webmd.com/fibromyalgia/guide/fibromyalgia-tender-points-trigger-points#1.  They are the primary method of determining whether an individual has fibromyalgia.  *See Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir. 2013) ("Relying on guidance from the American College of Rheumatology . . .we have focused on whether a patient exhibits 'tender points' in evaluating claims of fibromyalgia."); *see also* SSR 12–2P, 2012 WL 3104869, at *3 (July 25, 2012) (establishing criteria for diagnosis of fibromyalgia that includes at least eleven bilateral tender points).

*Id.*  She also found Plaintiff could perform no grasping, turning, twisting, fine manipulation or reaching with her left hand, and would be severely limited in doing so with her right hand.  T. 575.  In light of these impairments, NP Cleveland estimated Plaintiff would be absent from work more than four times per month.  T. 576.

NP Cleveland updated this physical assessment on October 25, 2017.  T. 1334-35.  She opined Plaintiff was able to occasionally lift and carry less than ten pounds, and estimated that Plaintiff was able to walk two blocks without rest or significant pain.  T. 1334.  She further opined Plaintiff could sit for a total of three hours and stand or walk for a total of three hours, but would require frequent thirty minute breaks throughout the workday.  *Id.*  NP Cleveland did not estimate how frequently Plaintiff could use her hands, fingers, and arms during the workday, instead noting that she was "unable to determine [because it] would depend on level of pain she is experiencing."  *Id.*  She did opine Plaintiff would be absent from work more than four times per month due to her impairments.  T. 1335.

The ALJ assigned NP Cleveland's opinions "little evidentiary weight because these are not supported by the clinical findings during physical examinations and there is no objective evidence to support her opinion as it relates to [Plaintiff's] absenteeism."  T. 34.  In support of this finding, the ALJ cited some of NP Cleveland's physical examination notes from April, June, November, and December 2015 that depicted Plaintiff with a normal gait, good range of motion in her upper or lower extremities, and varying numbers of tender points on palpation.  T. 34, 891, 897, 903, 909.

The ALJ's focus on discrete examination results in his assessment of NP Cleveland's opinions is an error requiring remand.  When determining residual functional capacity based on fibromyalgia, the ALJ is not entitled to rely solely on objective evidence (or lack thereof) related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment

12

record. *See Campbell v. Colvin*, 13-CV-0451 (GLS/ESH), 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (citing SSR 12-2p, 2012 WL 3104869, at *3). "A 'mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability,' but denying a fibromyalgia claimant's claim of disability simply because such evidence is not corroborated by objective medical evidence is reversible error." *Id*. at *6 (citing *Grenier v. Colvin*, 13-CV-0484 (GLS), 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014)). "In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Green-Younger v. Barnhart*, 335 F.3d at 108-109 (quoting *Lisa v. Sec. of Dep't of Health and Human Svcs*., 940 F. 2d 40, 45 (2d Cir. 1991)). "Hence the absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'" *Id.* at 109 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

The ALJ applied the same erroneous approach to the opinion of Dr. Kalyani Ganesh, who performed a consultative physical examination of Plaintiff on March 15, 2016. T. 580-83. In her report, Dr. Ganesh noted Plaintiff appeared in no acute distress during the examination, with a normal gait and an ability to walk on her heels. T. 581. Plaintiff could not walk on her toes or perform a squat, but needed no help changing for the examination, getting on and off the examination table, and was able to rise from a chair without difficulty. *Id*. She had full flexion, extension, and rotary movement in her cervical and lumbar spine. T. 582. Dr. Ganesh found intact hand and finger dexterity and full grip strength in both hands. *Id.* Based on this examination, Dr. Ganesh opined Plaintiff had no gross limitations with regard to sitting,

13

standing, or walking, and had mild limitations with regard to lifting, carrying, pushing, and pulling. T. 583.

The ALJ assigned great weight to Dr. Ganesh's opinion because it was consistent with the objective results of the consultative examination. As discussed above, this emphasis on the physical examination results was error in light of Plaintiff's fibromyalgia diagnosis. Indeed, the ALJ touched upon the difficulty in assessing the limitations associated with this impairment when he noted Plaintiff "had no tender points during the consultative examination, which suggests that she does not have fibromyalgia or that it was not active at the time." T. 31. In this case, the drawbacks of placing the greatest weight on a one-time consultative examination were heightened because Dr. Ganesh's March 15, 2016, examination took place prior to Plaintiff's breast cancer diagnosis in July 2016. T. 591-92. As the ALJ recognized in his decision, Plaintiff' experienced "more than minimal" physical limitations as a result of the cancer and side effects from radiation and chemotherapy treatment. T. 31.

The ALJ also erroneously over-relied upon Plaintiff's daily activities, including cooking, cleaning, doing laundry, shopping, dressing herself, and bathing to determine that she was capable of performing less than the full range of light work. T. 33, 581, 587. In the typical case, these types of limited activities provide "a very weak basis" for an RFC in the absence of supporting medical evidence, because none were performed at a rate of eight hours a day, five days a week. *See Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. Feb. 22, 2018). In this case, the ALJ did not address the ample record evidence that Plaintiff received regular assistance from her children, mother, and neighbor in completing most or all of these daily tasks.[6] T. 70-71, 318, 322.

---

[6] The ALJ's decision mentions correspondence provided by Plaintiff's mother and neighbor, but only to reject their lay diagnoses of Plaintiff's impairments, and did not discuss their description

In his discussion of Plaintiff's daily activities, the ALJ also noted Plaintiff was a single mother of two children who "is able to care for her children and has not been investigated by child protective services or had her parental rights terminated." T. 38. Plaintiff found this non sequitur "offensive," and the Commissioner conceded that this comment was "inappropriate," "off-color," and "ill-advised." (Dkt. No. 11 at 24; Dkt. No. 13 at 18.) This Court does not disagree with the parties' characterization of the ALJ's comment, and only adds that the ALJ failed to show how this fact bore any rational connection to the disability determination.

### B.    Plaintiff's Mental Limitations

State agency psychological consultant Dr. O. Fassler reviewed Plaintiff's mental health records, including the consultative examination, and included his opinion as part of the initial disability determination on April 7, 2016. T. 101-103. He opined Plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. T. 102. Dr. Fassler also opined Plaintiff would be moderately limited in her abilities to sustain an ordinary routine without special supervision, complete a normal workday or workweek without interruption, respond appropriately to changes in her work setting, and perform at a consistent pace without an unreasonable number and length of rest periods. T. 102-103.

Dr. Fassler also opined, based on the available medical records, that Plaintiff was not significantly limited in most other functional areas, including her ability to carry out very short and simple instructions, work in coordination with or in proximity to others without being distracted by them, or make simple work-related decisions. T. 102. The state agency consultant

---

of the assistance Plaintiff required with cooking, housekeeping, taking out the trash, grocery shopping, and taking her children to school. T. 318, 322.

likewise opined Plaintiff was not significantly limited in her ability to interact appropriately with the general public, or to accept instructions and respond appropriately to criticism from supervisors.  *Id*.  Based on those findings, Dr. Fassler opined Plaintiff retained the mental capacity to "perform the basic demands of unskilled work on a sustained basis."  T. 103.

On March 29, 2016, Dr. Cheryl Loomis performed a consultative psychiatric examination of Plaintiff.  T. 585-88.  In her report, Dr. Loomis described Plaintiff as cooperative with adequate social skills and appropriate eye contact.  T. 586.  During the examination, Plaintiff's thought processes were coherent and goal directed, with a depressed and tearful affect.  *Id*.  She demonstrated intact attention and concentration, but impaired memory skills.  T. 587.  Dr. Loomis observed Plaintiff was able to immediately recall a series of three words but could only remember two of those three words after five minutes.  *Id.*

According to Dr. Loomis' notes, Plaintiff reported she could dress, bathe, and groom herself daily.  *Id*.  Plaintiff reported she cooked three to four times per week, cleaned up to twice per week, could do laundry, shop, drive, and take public transportation.  *Id*.  Based on her examination of Plaintiff, Dr. Loomis opined Plaintiff had no limitation in her ability to follow and understand simple directions and instructions, her ability to perform simple tasks independently, maintain attention and concentration, make appropriate decisions, and relate adequately with others.  *Id*.  She further opined Plaintiff had marked limitations in her ability to maintain a regular schedule, perform complex tasks both independently and under supervision, and to appropriately deal with stress.  *Id*.  In Dr. Loomis' opinion, these examination results appeared to be consistent with psychiatric problems that may significantly interfere with Plaintiff's ability to function on a daily basis, and she gave Plaintiff a "fair to guarded" prognosis.  T. 588.

16

The ALJ assigned "some weight" to Dr. Loomis' opinion, but found that neither the consultative examination results nor the treatment record supported a finding of marked limitations in Plaintiff's ability to maintain a regular schedule. T. 35. This finding was consistent with Dr. Fassler's opinion that the record, including the consultative examination report, did suggest such limitations. T. 103. "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Gamble v. Comm'r of Soc. Sec.*, No. 1:15-CV-0352 (GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016) (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), adopted by 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016). In this case, the ALJ assigned great weight to Dr. Fassler's opinion because it was consistent with and supported by Plaintiff's reported activities of daily living and the clinical findings in the record.[7] T. 36. Therefore, the ALJ's mental RFC determination was generally supported by substantial evidence, with one exception. In response to confusion or fogginess that was a side effect of Plaintiff's cancer treatment and medication, and her reported hearing difficulties, the ALJ limited Plaintiff to jobs that required written, rather than verbal instructions, and limited her to simple routine tasks in a work environment free of fast-pace production requirements and few work place changes. T. 32. The ALJ appears to have relied on his lay opinion that this accommodation would improve Plaintiff's ability to function in the workplace, despite some evidence Plaintiff had problems concentrating while reading. T. 58, 69, 587. Such error would likely be harmless on its own. However, on remand, the

---

[7] NP Cleveland also submitted a check-box form entitled "Mental Capacity Assessment," but it is evident from the limited narrative on the form that her opinion that Plaintiff would have marked limitations in the ability to complete the workday without interruption was premised on the distractions created by chronic pain, rather than psychiatric impairments. T. 578. The ALJ assigned "no weight" to this opinion because it was inconsistent with Plaintiff's mental health treatment record. T. 35.

Commissioner should confirm that all elements of the RFC determination are supported by substantial evidence in the record.

### C.      Appointment Clause

Because remand is necessary for the reasons identified above, the Court declines to reach a decision on Plaintiff's claim regarding the propriety of the ALJ's appointment and the need to exhaust this claim at the administrative level.  The Court, however, notes that the SSA has appeared to correct any deficiency in the appointment of ALJs through regulation, so any potential defect should not affect the hearing on remand.  *See* 84 Fed. Reg. 9582-02 (Mar. 15, 2019).

### IV.     CONCLUSION

For the reasons set forth above, the Court finds the ALJ's RFC determination was not supported by substantial evidence.  Because the ALJ's RFC determination was not supported by substantial evidence, the ALJ's analysis at step five, and the ultimate finding that Plaintiff was not disabled, were tainted.  Therefore, on remand, the Commissioner should properly address the totality of the medical opinions and other evidence regarding Plaintiff's functional limitations, assess and articulate Plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination.  If necessary, the ALJ should order further consultative examinations of Plaintiff, or use a medical consultant to offer opinions based on the complete medical evidence.

Finally, in light of the ALJ's comment regarding child protective services that Plaintiff found offensive, this Court encourages the Commissioner to "consider in [his] discretion whether the case warrants a 'fresh look' by a new ALJ." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 300-01 (W.D.N.Y. 2006) (citing *Nunez v. Barnhart*, 01-CV-5714, 2002 WL 31010291 (E.D.N.Y. Sept. 9, 2002); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.


Dated: July 6, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge